**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2122
_____

BLANCA ELIZABETH GUAYLLA PAGUAY,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review from the Board of Immigration Appeals
(A209-241-672)
Immigration Judge: Shifra Rubin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 8, 2024

Before: JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Opinion filed: July 9, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Blanca Guaylla Paguay petitions for review of the Board of Immigration Appeals' decision affirming the denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons that follow, we will deny the petition.

I

Guaylla Paguay is a native and citizen of Ecuador. She entered the United States without inspection in 2016, and shortly thereafter the Department of Homeland Security initiated removal proceedings against her. The agency charged her with being subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) because she was present in the United States without being admitted or paroled. She conceded her removability, and the Immigration Judge (IJ) sustained the charge.

Guaylla Paguay subsequently filed applications for asylum, withholding of removal, and protection under CAT. The IJ determined that Guaylla Paguay failed to prove a nexus between any harm she experienced in Ecuador (or the future harm she fears) and her membership in a particular social group, so it denied the application for asylum and withholding of removal. The IJ also denied the application for CAT protection, concluding that Guaylla Paguay did not show she was more likely than not to be tortured if she returned to Ecuador.

Guaylla Paguay appealed to the BIA, which effectively affirmed the IJ's decision on all three forms of relief. She timely petitioned this Court for review.

## II

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's legal determinations *de novo*, and we review the underlying factual findings for "substantial evidence." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018). Under the substantial evidence standard, we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." *Sesay v. Att'y Gen.*, 787 F.3d 215, 220 (3d Cir. 2015).

Where the BIA has adopted and affirmed the IJ's decisions, we review both the IJ and BIA opinions. *See S.E.R.L.*, 894 F.3d at 543. However, "we look to the IJ's opinion only where the BIA has substantially relied on that opinion." *Id.* (internal quotation marks omitted).

## III

### A

To be eligible for asylum, Guaylla Paguay must establish that she is a refugee within the meaning of 8 U.S.C. § 1101(a)(42). *See S.E.R.L.*, 894 F.3d at 543–44. She may do so by showing past persecution or a well-founded fear of persecution in Ecuador based on her membership in a particular social group ("PSG"). *See* 8 U.S.C. § 1158(b)(1)(B)(i); *S.E.R.L.*, 894 F.3d at 543–44. "A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution." *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021).

3

Guaylla Paguay contends that her testimony before the IJ established the requisite nexus between the harm she experienced in Ecuador and her membership in the PSG "Head of Household as Ecuadorian Woman." Opening Br. at 13. But substantial evidence supports the agency's finding that her membership in that group was not "one central reason" for her persecution. *See Thayalan.*, 997 F.3d at 138 ("[P]ersecution is not on account of a protected ground unless that ground is at least one central reason why the applicant was or will be targeted." (internal quotation marks omitted)); 8 U.S.C. § 1158(b)(1)(B)(i).

At the merits hearing before the IJ, Guaylla Paguay testified that a local gang in Ecuador called Sombra Negra (translated as the "Black Shadow") demanded regular protection payments and that she and her siblings were attacked after refusing to pay. She made only a conclusory assertion that the violence she alleged was related to her membership in the PSG "Head of Household as Ecuadorian Woman." And when the IJ specifically asked Guaylla Paguay if members of Sombra Negra ever said that they were threatening her because she was a woman, Guaylla Paguay said no. Instead, Guyalla Paguay affirmed multiple times that the attacks on her and her siblings were connected to the extortion payments and the gang's desire for money, without mentioning any additional motivation. She added on cross-examination that the attacks stopped during the years that

4

she paid the extortion money.  Therefore, substantial evidence supported the BIA's no-nexus finding.[1]

B

Guaylla Paguay also asserts that the BIA erroneously affirmed the denial of her CAT claim.[2]  The BIA's review of a CAT claim proceeds in two steps.  "First, the agency must determine 'whether an applicant has met the burden of establishing that it is more likely than not [she] would be tortured if removed.'  Second, the agency asks whether public officials will acquiesce in the likely treatment." *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019) (quoting *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017)).

Guaylla Paguay argues that the IJ erred at the first step by failing to make findings about whether she is more likely than not to be tortured if removed.  We disagree.  The IJ found that she did not prove she was more likely than not to be tortured.  In support of this finding, the IJ noted that Guaylla Paguay's siblings continued to reside in Ecuador unharmed for three years after she left, and only a rumor supported her fear that Sombra

---

[1] It is unclear from her brief whether Guaylla Paguay seeks review of the agency's denial of her application for withholding of removal.  In any event, because withholding of removal has a more demanding standard than asylum, any challenge would fail. *See Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011).

[2] Notwithstanding the government's arguments to the contrary, Guaylla Paguay exhausted her CAT arguments on appeal to the BIA. *See Luziga v. Att'y Gen.*, 937 F.3d 244, 251 (3d Cir. 2019) ("[O]ur exhaustion policy is liberal: if the petitioner makes some effort, however insufficient, that puts the agency on notice of a straightforward issue, the requirement is satisfied." (internal quotation marks omitted)).  She also preserved them in her opening brief here.

Negra was looking for her. The BIA found no error in these findings, and they were supported by substantial evidence.

Upon finding an insufficient likelihood of torture, the IJ did not proceed to *Myrie*'s second step: addressing government acquiescence. Guaylla Paguay contends that this amounts to noncompliance with *Myrie*. But any failure to address government acquiescence was harmless where Guaylla Paguay did not meet her burden at Myrie's first step. *See Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).

\*　　\*　　\*

For the foregoing reasons, we will deny the petition for review.